

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN WELLS, | ) |
| Plaintiff, | ) ) ) |
| | ) Case No. 07 C 4314 |
| v. | ) ) Magistrate Judge ) Arlander Keys |
| | ) |
| TALK RADIO NETWORK-FM, INC., AND ERICH MATTHEW MULLER, | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff John Wells (Wells) is paid to make voice recordings which are subsequently broadcast on radio stations nationally. Wells filed the underlying action against Defendants Talk Radio Network-FM, Inc. (Talk Radio) and Erich Matthew Muller, a.k.a. Mancow (Mancow) in California state court alleging violation of the Illinois Right of Publicity Act, 765 Ill. Comp. Stat. 1075/1-60; violation of the California Right of Publicity Act, Cal. Civ. Code § 3344; violation of the Lanham Act, 15 U.S.C. § 1125(a); and interference with contractual relationships. Defendant Talk Radio timely removed the case to federal court on the bases of diversity and federal claim jurisdiction. Before the Court is Defendants' Motion to Dismiss Count II, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Defendants' motion to dismiss is DENIED.

**Factual Background**

The following summary of factual allegations is taken from Plaintiff's Complaint and is deemed true for purposes of this motion. *See Cody v. Harris*, 409 F.3d 853, 857 (7th Cir. 2005).

As a "radio voice personality," Plaintiff enters into contractual relationships with radio stations in which he agrees to record voice advertisements and messages to be broadcast on radio stations nationally. (Compl. at 2.) As part of these contractual arrangements with said radio stations, Wells agrees that he will not provide identical or similar services to neither competing radio stations nor those stations located in the immediate service areas of the contracting radio stations. (*Id.* at 3.)

Wells entered into such an agreement with WRCX with respect to Defendant Mancow's WRCX radio broadcast. The terms of the contract provided, *inter alia*, that Plaintiff's voice recordings were to be used solely for WRCX broadcasts and only for the duration of the contractual arrangement. (*Id.*) However, Plaintiff alleges that on or about November 11, 2004, Defendants used the voice message that was the subject of the WRCX contract for an on-the-air advertisement for "Mancow's Morning Madhouse" on Defendant Talk Radio's affiliate radio stations. Defendants' alleged improper use of Plaintiff's voice continued from November 2004 through 2006. (*Id.*)

One such affiliate radio station on which Plaintiff's voice recording was broadcast was KZPL-FM Kansas City (KZPL) (Pl.'s Exhibit 1.) However, this broadcast was in direct violation of an exclusive contract that Wells previously entered into with a direct competitor of KZPL - KQRC-FM Kansas City (KQRC). Consequently, Plaintiff received from KQRC a letter demanding an "immediate removal of [Plaintiff's] voice from The Mancow Show and any other usage on KZPL." (Id.)

Additionally, Wells avers that Defendants copied the November 18, 2004, radio broadcast onto compact discs and distributed the discs to various radio stations as promotional material in an effort to garner new markets. (Compl. at 4.)

## Standard of Review

Motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) test the sufficiency of the complaint rather than the merits of the case. *Midwest Gas Servs. v. Ind. Gas Co.*, 317 F.3d 703, 714 (7th Cir. 2003). In reviewing a motion to dismiss, a court construes all allegations in the complaint in the light most favorable to the plaintiff, taking all well-pleaded facts and allegations within the complaint as true. *Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2002); *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000). The moving party bears the burden of showing beyond a doubt that the plaintiff can prove no set of facts in

support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). A complaint is not required to allege all or any of the facts logically entailed by the claim. *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998).

## Discussion

Count II of Plaintiff's Complaint alleges a violation of the Illinois Right of Publicity Act, 765 Ill. Comp. Stat. 1075/1-60.

Section 30 of the Illinois Right of Publicity Act provides that, "A person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person or persons." 765 Ill. Comp. Stat. 1075/1-30. While the statute itself does not explicitly provide a limitations period, because the Illinois Right of Publicity Act completely supplanted the common law tort of appropriation of likeness,[1] courts have applied the one-year statute of limitations applicable to the common law tort. *See Blair v. Nev. Landing P'ship*, 859 N.E.2d 1188, 1192 (Ill. App. Ct. 2006) (one-year statute of limitations period applicable to Right of Publicity Act).

Generally, the limitations period for tort causes of action

---

[1] "The rights and remedies provided for in this Act are meant to supplant those available under the common law as of the effective date of this Act, but do not affect an individual's common law rights as they existed before the effective date of this Act." 765 Ill. Comp. Stat. 1075/1-60.

4

begins to run "when facts exist that authorize one party to maintain an action against another." *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 85 (Ill. 2003). However, there exists an exception – the "continuing violation rule" – when the cause of action involves a continuing or repeating injury. *Id.* Under the "continuing violation rule" the statute of limitations period does not begin to run until the date that the tortious conduct ceases or until the date of the last injury. *Id.* It is the continuing unlawful acts and conduct – not the continual ill effects of an initial violation – that constitute a continuing violation. *Id.* However, where a single overt act results in subsequent damages, the limitations period begins to run on the date that the injury occurred. *Id.*

In the case at bar, Defendants' sole contention is that Count II of Plaintiff's Complaint is barred by the statute of limitations. Defendants assert that, as a result of KQRC's cease and desist letter, Plaintiff knew or had reason to know of the alleged unlawful use of his voice by October 6, 2005. Consequently, Defendants argue that the filing of Count II of Plaintiff's Complaint on December 20, 2006, was not timely. Further, Defendants aver that, because the alleged misappropriation of Plaintiff's voice was used for a singular purpose and directed towards a single audience, the alleged violation constitutes a single overt act rather than a continuing

violation. The Court disagrees and in so doing finds the reasoning of *Lehman v. Discovery Communications*, 332 F.Supp. 2d 534 (E.D.N.Y. 2004), to be persuasive.

In *Lehman*, the Learning Channel network aired a television program which provided an account of an orthopaedic surgeon's arrest for insurance fraud. (*Id.* at 536.) The television program was aired on the Learning Channel on 17 occasions, from March 21, 1999 until May 24, 2001. (*Id.*) The surgeon was subsequently acquitted of all charges and later brought an action against Discovery Communications for defamation. (*Id.*) Arguing that the filing was untimely as it was brought more than a year after the accrual of the cause of action, the defendant filed a motion for summary judgment. (*Id.* at 537.) However, the court denied the motion, holding that a rebroadcast is "intended to reach a new audience and is therefore an additional communication." (*Id.* at 540.) The court further reasoned that, "A rebroadcast has renewed impact with each viewing and creates a new opportunity for injury, thereby justifying a new cause of action." (*Id.*) Additionally, the Court finds this holding to be consistent with that of the Seventh Circuit in *Collier v. Murphy*, 2003 U.S. Dist. LEXIS 4821, No. 02 C 2121 (N.D. Ill. Mar. 24, 2003).

In *Collier*, the plaintiff alleged that a character on a popular television show was modeled after him. (*Id.* at 2.) As a

6

result, the plaintiff filed suit alleging violation of, *inter alia*, common law invasion of privacy. (*Id.* at 9.) Defendants subsequently filed a motion to dismiss the plaintiff's invasion of privacy claim on the ground that it was barred by the one-year statute of limitations. (*Id.*) Though the Court disposed of the motion on other grounds, it held that, though the television show began broadcasting in January 1999 and the complaint was not filed until March 22, 2002, the program ran until May 2001, and thus, the complaint was well within the one year period. (*Id.*)

In the case at bar, Plaintiff alleges that, while the initial misappropriation occurred on November 11, 2004, Defendants' use of Plaintiff's voice recordings continued until 2006. As the *Lehman* court held, each subsequent rebroadcast was an attempt to reach a new audience and, therefore, retriggered the statute of limitations. This is bolstered by Plaintiff's contention that by distributing promotional discs containing Plaintiff's voice, Defendants sought not to reach Defendants' existing listeners but rather to "further the sale of Mancow's Show in potential *new* markets." Consequently, because Defendants sought to reach a new audience with the rebroadcasting of Plaintiff's voice and Plaintiff's Complaint was filed within one year of the 2006 broadcast, the Court finds Plaintiff's Count II

7

claims to be timely.[2]

## Conclusion

For the reasons articulated above, the Court DENIES Defendants' motion to dismiss with prejudice.

DATE: August 7, 2008

ENTERED:

_____
ARLANDER KEYS
United States Magistrate Judge

---

[2] The Court finds Defendants' reliance on *Blair*, 859 N.E.2d 1188, to be misplaced. In *Blair*, the court held that the publication of a photograph of the plaintiff in a casino setting was geared towards attracting the casino's *existing* customers to a steakhouse located inside of the casino. Because Plaintiff pleads and the Court finds Defendants' use of Plaintiff's voice in the case at bar to be geared towards attracting *new* listeners, *Blair* is inapplicable to facts of the case at bar.

8