IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOHN WELLS, an individual,  )
                            )
        Plaintiff,           )    No. 07 C 4314
                            )
    v.                       )
                            )
TALK RADIO NETWORK-FM, INC., )    Magistrate Judge Arlander Keys
a Corporation, ERICH MATTHEW )
MULLER, an individual, and   )
DOES ONE THROUGH ONE HUNDRED,)
                            )
        Defendants.          )

## MEMORANDUM OPINION AND ORDER

John Wells is a radio voice personality who contracts with radio stations to record voice messages and advertisements to be broadcast throughout the United States. Mr. Wells' voice is distinctive and widely known, which is why the stations are willing to pay for his services. Prior to recording these voice messages, Mr. Wells typically executes a contract with the radio station wanting to secure his services; those contracts typically control the duration of the run (dictating how often and how long the spots will air) as well as the reach of the broadcast (dictating on which stations they may air).

At some point, Mr. Wells contracted to do some work for radio station WRCX relating to Erich "Mancow" Muller's show; as always, the use of the spots was governed by a contract. Despite that, Mr. Wells' voice work was broadcast outside the parameters of the contract, on Talk Radio Network-FM's Affiliate Stations for the talk radio show known as "Mancow's Morning Madhouse"; the

airing of the spots caused Mr. Wells to get in hot water with other stations, with whom he had given the exclusive right to the use of his voice work during that period and in that geographic market. In fact, on October 6, 2005, Mr. Wells received a letter from KQRC-FM, notifying him that his voice was being heard daily on The Mancow Morning Madhouse Show on Kansas City's KZPL-FM, in violation of his voice talent contract with KQRC-FM. KQRC demanded the immediate removal of Mr. Wells' voice from the Mancow Show and any other usages on KZPL, and Mr. Wells took steps to achieve that end. He also sued Talk Radio Network-FM and Mr. Muller in state court in California, alleging voice misappropriation, violation of the Lanham Act, and interference with contractual relationships. The case was removed to this court, and is currently up on Defendants' Second Motion to Compel Discovery and for Sanctions under Rule 37.

This is not the first time the parties have brought their discovery spats into court; indeed, there is a long history of bickering over discovery issues. Most recently, on February 2, 2009, the Court held a hearing on defendants' first motion to compel discovery and for sanctions. After hearing extensively from both sides, the Court entered an order granting the motion and directing the plaintiff to answer all outstanding discovery by February 12, 2009, including all document requests and interrogatories; the Court ruled that all objections had been

waived, and that all further discovery requests and responses were to be handled through local counsel to avoid any unnecessary delay.

At some point in the three weeks following the entry of that order, the discovery process again broke down, and, on February 24, 2009, the defendants filed a second motion to compel; they also seek sanctions under Rule 37.

Specifically, this time around, the defendants argue that they are entitled to relief because: (1) the plaintiff failed to follow the Court's February 2, 2009 Order by submitting answers that contained objections, were incomplete, unverified and evasive; (2) the plaintiff submitted his discovery responses through California counsel, and not through local counsel, as provided in the Court's February 2, 2009 Order; (3) the plaintiff produced documents on CDs, and not in hardcopy, the form they are maintained in by the plaintiff in the ordinary course of business; (4) plaintiff left his deposition early; and (5) plaintiff failed to respond to the request for production. Initially, judges have tremendous discretion in supervising discovery and in deciding whether to impose sanctions. *E.g., Mintel International Group, Ltd. v. Neergheen*, No. 08 C 3939, 2009 WL 1033357, at *5 (N.D. Ill. April 17, 2009). Federal Rule of Civil Procedure 37 allows the Court to sanction a party for failing to obey a discovery order and for failing to respond

fully to discovery.

On February 11, 2009, Alan Harris, Los Angeles counsel for plaintiff, served plaintiff's second supplemental responses and objections to defendant Muller's interrogatories, plaintiff's second supplemental responses and objections to defendant Talk Radio Network-FM's interrogatories, and plaintiff's second supplemental responses and objections to defendant Muller's First Request for Production of Documents. According to the accompanying certificates of service, Mr. Harris served these discovery responses via Fedex to Mr. Young at his offices in Westchester, Illinois. Along with those responses, Mr. Harris sent a letter to Mr. Young, advising him that he would produce documents responsive to defendants' Request for Production of Documents at the deposition of Mr. Muller, which was scheduled to go forward on Friday, February 13, so that they could have the documents in time for Mr. Wells' deposition, which was scheduled for Saturday, February 14.

The defendants first argue that Mr. Wells should be sanctioned because he included objections in his responses; the Court has already ruled that all objections are waived, and the inclusion of objections was, therefore, pointless. But the Court also notes that, after making the same boilerplate objections to each of the 27 document requests – which required the waste of 34 pages of paper – plaintiff answered each document request with

the same response: he agreed to produce the documents. And the Court will not sanction the plaintiff for preserving his objections.

The defendants next argue that the plaintiff violated the Court's February 2, 2009 Order when he served discovery responses from California counsel, rather than serving them from local counsel, as directed by the Court. Again, although it is technically true that the responses should have come from local counsel, this is the kind of dispute that elevates form over substance and really wastes the Court's time. The whole point of the order was to avoid delay, and sending them via overnight delivery – whether from Los Angeles, or from Illinois – is an expeditious delivery mode.

The defendants next challenge the way in which the plaintiff produced documents in response to their request. It appears that Mr. Wells provided the defendants with two CDs containing all of the documents he intended to produce in response to the defendants' discovery requests. He sent the CDs to Mr. Young in advance of his deposition, but just barely. And, as it turned out, Mr. Young was unable to open the CDs – not, apparently, because of any defect in the CDs, but because Mr. Young's computer lacked the necessary programs or capacity to open the documents, which obviously frustrated Mr. Young's attempt to retrieve the documents in advance of Mr. Wells' deposition.

Additionally, plaintiff's counsel emailed the documents to Mr. Young, but he could not open them – again, apparently because of his lack of technological acumen, not because there was something wrong with the transmission. Putting aside for the moment the question of whether the plaintiff's production would satisfy the technical requirements of discovery, there were a couple of things Mr. Young could have done, had he actually wanted to review the documents prior to Mr. Wells' deposition: he could have brought the CDs to a service and had the documents contained on them printed in hardcopy; or, in the weeks leading up to the deposition, he could have gotten the hardcopy documents directly from plaintiff's counsel's office, where, as Mr. Young had been advised, they were available for review and/or copying. Significantly, he chose not to pursue these options, opting instead to behave as if his hands were tied and blaming the plaintiff and his lawyer for his inability to digest the discovery. The Court will not encourage or reward such behavior by imposing sanctions on the plaintiff.

Next, the defendants contend that Mr. Wells failed to "fully attend his deposition." But that's not entirely accurate. In fact, the defendants initially noticed Mr. Wells' deposition for Friday, February 13, 2009, and they later asked to switch the date to Saturday, February 14, 2009. Mr. Leng, local counsel for Mr. Wells, agreed to accommodate Mr. Young's request, and, by

agreement, the depositions were switched, such that Mr. Muller's deposition was scheduled to proceed at Mr. Leng's office in Barrington, Illinois at 1:00 p.m. on Friday, February 13, 2009, and Mr. Wells' deposition was scheduled to proceed at Mr. Young's office in Westchester, Illinois at 9:00 a.m. on Saturday, February 14, 2009. When he agreed to the requested change, however, Mr. Leng advised Mr. Young that Mr. Wells' deposition "must end not later than 1 p.m. as both Mr. Kavanaugh and Mr. Wells have already booked their departure flights." See February 10, 2009 facsimile from Mr. Leng to Mr. Young. Mr. Young replied that "[t]his limitation on the Plaintiff's deposition . . . is not acceptable. I do not agree to limit Mr. Wells' deposition to a four hour period." See February 11, 2009 letter from Mr. Young to Mr. Leng. Nevertheless, Mr. Wells reported for his deposition, as scheduled, at 9:00 a.m., and Mr. Young conducted the deposition. At the end of the deposition, Mr. Young noted on the record that he had received the plaintiff's response to the defendants' document requests, but that the response was, number one, late, and, number two, produced in a format that he was unable to open. He asked Mr. Wells not to leave at 1:00, but to stick around so that he could resume the deposition on Monday morning. In response, counsel for Mr. Wells declined, but agreed to work with Mr. Young to find a mutually-agreeable time to resume the deposition. At no time did Mr. Wells or his attorney

challenge Mr. Young's entitlement to continue the deposition; they simply were not able to stay that day. And, significantly, even if they had agreed to stay, Mr. Young indicated that he was not going to be ready to talk about the documents the plaintiff produced until Monday. Given the circumstances, it was not unreasonable - and certainly not sanctionable - for Mr. Wells to leave. And, in what seems to be a pattern of wanting to vindicate what he perceives (rightly or wrongly) are his rights under the discovery rules, rather than actually pursuing discovery to aid in his clients' defense, Mr. Young raced into court. He could have accepted Mr. Kavanaugh's offer to find a mutually-acceptable date to continue Mr. Wells' deposition. But he chose not to do so. The documents included on the CDs were available for copying at his expense and he knew that; yet he chose not to exercise that option. Instead, he chose to accept the CDs and then complain that he got the documents in a format other than the hardcopy format in which they were maintained in the normal course of business. On the record at the deposition, counsel for Mr. Wells noted that Mr. Young seemed less inclined to work together to find a way to give Mr. Young what he claimed to want, and more inclined to want to fight skirmish after skirmish in front of the Court. The Court agrees with that assessment.

It is clear that there is no love lost between the lawyers

involved in this case. Both the transcript of Mr. Muller's deposition and the transcript of Mr. Wells' deposition contain incredibly childish exchanges between Mr. Young and Mr. Kavanaugh. Mr. Young's refusal to deal with email and facsimile, his refusal to answer his phone and his insistence on the use of overnight mail, is simply not reasonable in this day and age - when even court filings are accepted electronically. And his petulance and inappropriate interjections at those proceedings are borderline sanctionable. Mr. Kavanaugh stooped to Mr. Young's level of discourtesy and unprofessionalism, and the discord between the lawyers seemed to bring out the worst in the clients as well. Both counsel should have better control over themselves and their clients. At the end of the day, this behavior is standing in the way of a smooth and meaningful discovery process.

Finally, the defendants argue that Mr. Wells failed to respond to the request for production. They make two arguments about the document production: first, they argue that the production of CDs, which could not be opened, amounted to a failure to produce; they also argue that, because the CDs did not include tax returns, the production was deficient in this respect as well. With regard to the former argument, as explained above, counsel had other options with respect to the documents plaintiff produced; he could have reviewed and/or copied them directly from

plaintiff's counsel's office, or he could have taken the CDs to a service and had them copied that way. The fact that he chose not to pursue these routes does not negate plaintiff's production of documents. The bottom line is that the documents were available to defense counsel and he could have reviewed them and used them during discovery; instead, he would rather quibble over trifles. Similarly, although Mr. Wells did say that his tax returns were not included on the CDs, he also testified that discovery regarding his income was included. Thus, if the defendants really want to discover how much money Mr. Wells made in any given year, they could; again, counsel seems more interested in fighting than he does in preparing a defense to this case. As should be clear by now, the Court has no patience for these tactics and has no intention of encouraging or rewarding them by granting the defendants' motion..

### Conclusion

For the reasons explained above, the defendants' second motion to compel discovery and for sanctions [#106] is denied.

Dated: June 3, 2009

ENTER:

_____
ARLANDER KEYS
United States Magistrate Judge